UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
MAXINE WILSON, et al.,

                    Plaintiffs,

   - against -

ISAAC TOUSSIE, et al.,

                    Defendants.
----------------------------X

01-CV-4568 (DRH)(WDW)

**MEMORANDUM AND ORDER**

**A P P E A R A N C E S:**

**MILBERG WEISS LLP**
Attorneys for Plaintiffs
One Pennsylvania Plaza
New York, New York 10119
By:   Kirk E. Chapman, Esq.
       Peter E. Seidman, Esq.
       Jeffrey R. Messinger, Esq.

**LEEDS MORELLI & BROWN, P.C.**
Attorneys for Plaintiffs
One Old Country Road, Suite 347
Carle Place, New York 11514
By:   Lenard Leeds, Esq.
       Jeffrey K. Brown, Esq.

**WILLIAMS & CONNOLLY LLP**
Attorneys for Toussie Defendants
725 12th Street, N.W.
Washington, D.C. 20005
By:   Joseph G. Petrosinelli, Esq.
       John E. Joiner, Esq.
       Paven Malhotra, Esq.

**HAMBURGER, MAXSON, YAFFE, WISHOD & KNAUER, LLP**
Attorneys for Toussie Defendants
225 Broadhollow Road, Suite 301E
Melville, New York 11747
By:   Richard Hamburger, Esq.
       David N. Yaffe, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs commenced this purported class action alleging claims under, inter alia, the Fair Housing Act, the Civil Rights Act, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and the New York General Business Law, as well as common law causes of action, all arising from their purchase of homes from the defendants on Long Island and Staten Island between 1994 and 2001. Pending before the Court is Plaintiffs' motion for certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). For the reasons set forth below, Plaintiffs' motion is denied.

## BACKGROUND

In this proposed class action, Plaintiffs challenge an alleged policy and practice of race discrimination and racial steering committed by the Defendants. Plaintiffs, on behalf of over 400 homeowners, allege that Defendants Isaac Toussie, Robert Toussie, Toussie Family Homes, David Park Estates, Inc., Easy Home Program Corporation, East Coast Land Developers Corporation, Flend Corporation, Fobert Corporation, Housing Corporation of America, Marconi Realty Ltd., Rod Staten Corporation, Toussie Family Enterprises Ltd., Toussie Group Ltd., Your Long Island Home Corp., and Your Staten Island Home Corp. (the "Toussie Defendants" or "Sellers")[1] through a discriminatory policy and procedure, systematically steered minority home buyers to racially segregated neighborhoods on Long Island and Staten Island to buy homes they could not afford and that were overpriced, had mortgage and/or property tax payments that were

---

[1] At the present time, Plaintiffs are seeking class certification only as against the Toussie Defendants. The request for class certification as to the remaining defendant is being held in abeyance pursuant to the stipulation between Plaintiffs and Defendant PMCC Mortgage Corp. (*See* Docket No. 220, "So Ordered" on April 25, 2006).

dramatically higher than represented, defectively built, lack promised amenities and were located in different towns and worse neighborhoods than represented.[2]

Plaintiffs seek certification of a liability class with respect to Long Island defined as follows:

> All Blacks and Hispanics who purchased residential real estate
> from the Sellers and who:
> (a) because of their race and/or national origin, were, pursuant to
> the Sellers' blanket policies and standard practices, steered to areas
> Defendants had designated for Black and Hispanic purchasers (the
> "Designated Areas"); and
> (b) because of Defendants' standard deceptive conduct, purchased
> intentionally overpriced and over-appraised homes, homes with
> mortgages they could not afford, homes with property tax
> payments higher than represented, homes that were defectively
> built, homes lacking in promised amenities, and/or homes located
> in different towns and in worse neighborhoods than represented.

Plaintiffs also seek certification of the following liability subclass with respect to Staten Island:

> All persons who purchased residential real estate from Sellers, and
> who, because of Defendants' deceptive conduct, purchased
> intentionally overpriced and over-appraised homes, homes with
> mortgages they could not afford, homes with property tax
> payments higher than represented, homes that were defectively
> built, homes lacking in promised amenities, and/or homes located
> in different towns and in worse neighborhoods than represented.

Pls.' Mem. filed pursuant to Court's March 1, 2007 Order ("Pls.' Supp. Mem.") at 1-2.

Sellers oppose class certification on the grounds that the proposed class is not ascertainable, common issues do not predominate, and a class action is not superior to individual actions. In addition, Sellers assert that Plaintiffs' claims are not typical and they and their

---

[2] Plaintiffs also assert claims alleging breach of contract, breach of express warranty and breach of implied warranty of habitability, but do not seek class certification with respect thereto.

3

counsel are not adequate representatives.

The facts as alleged by Plaintiffs are as follows: The Toussie Defendants were, during the relevant time period, involved in the business of buying land and creating residential subdivisions. In the residential subdivisions that they create and build, the Toussies have implemented a policy by which they covertly steer minority buyers to purchase defective homes in predominantly minority neighborhoods and away from predominantly white neighborhoods. Defendant Isaac Toussie instructed his sales staff that certain areas were designated as "whites only" areas and reprimanded sales agents who showed homes to minorities in areas designated exclusively for whites.

The Toussie Defendants targeted minorities by advertising in newspapers and other media that cater to minorities. Also, they falsely advertised (1) sponsorship by the NAACP, (2) praise from Black celebrities and (3) that they were the official builder of the Long Island Housing Partnership. Once potential customers personally came in, their applications were coded by race, color and/or national origin. Minority customers who inquired about purchasing homes in predominantly white communities were discouraged and, in some cases, were falsely told that Sellers did not have any available homes for sale in predominantly white communities.

Sellers' advertisements led these first time home buyers to believe that with only a small down payment, they could afford a home in the suburbs of Long Island and Staten Island in a good neighborhood with good schools, even if they had no credit or bad credit. Once the buyer agreed to purchase, the Sellers chose a bank to finance the purchase, a builder to construct the home, an appraiser to over appraise the home, a lawyer to mislead purchasers during the course of the purchase and an abstract company to draft a deed often falsely listing the address of the

home as being located in a more desirable community than it in fact was. The Sellers would insist that class members use service providers chosen by the Sellers.

As many of the targeted customers were unable to qualify for mortgages, Sellers, with the cooperation of the banks chosen by Sellers, made it their regular practice to falsify the prospective buyers' loan applications. Sometimes bogus gifts were given to cover down payments or to inflate the buyer's income in order to create the false illusion that the buyer qualified for the loan. The amount of any "gift" was simply rolled into the price of the home. A number of the Sellers' employees have pled guilty to charges involving the real estate fraud alleged in this case and have been banned by HUD from selling FHA-backed loans.

Once a class member's home was constructed, the Sellers would select an appraiser who, at Sellers' behest, substantially over appraised the home so that it would match the predetermined sales price. In addition, the appraisers chosen by the Sellers used the Sellers' own previously sold and overpriced properties as comparables, thus helping to create an artificially inflated market for the Sellers' houses. As part of an investigation into the defendants' conduct, the New York State Attorney General hired appraisers to re-appraise a sample of the homes that had been sold by the Sellers to determine their value on the date the homes were sold to buyers. According to these appraisals, the appraisals done in connection with the sales to class members inflated the value of homes by as much as $66,000, or roughly 50%. By way of example, a home that sold for $206,000 was appraised at $140,000; another home that sold for $184,000 was appraised at $125,000.

The Sellers' advertisements offered homes with a number of amenities that were not received by the putative class members. Homes were so defective in construction that class

members were forced to make costly repairs on their new homes just to make them livable.

At this juncture, the Court merely notes that Defendants do not accept Plaintiffs' recitation of facts. It is unncessary to address Defendants' specific objections and contentions because, as set forth below, the Court finds the proposed class is not ascertainable.

## DISCUSSION

### I. Class Certification Generally

Class action certification is governed by Federal Rule of Civil Procedure 23. A moving party must satisfy all four prerequisites to certification contained in Rule 23(a). Additionally, the class must be maintainable as defined in Rule 23(b).

Class certification may be granted only if the court "is satisfied after a 'rigorous analysis' that the prerequisites of Rule 23 have been satisfied." *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006), *clarified on denial of rehear'g*, 483 F.3d 70 (2d Cir. 2007) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). The following standard governs class certification motions in the Second Circuit:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such

> requirements are met in order to assure that a class certification
> motion does not become a pretext for a partial trial of the merits.

*Id*.

The four prerequisites to class certification, contained in Rule 23(a), are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to Rule 23(a), a class action must qualify under one of the alternatives set forth in Rule 23(b). Here, Plaintiffs rely on Rule 23(b)(3), under which a class action may be maintained if :

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

Fed. R. Civ. P. 23(b)(3).

## II. Ascertainability of the Class

As a preliminary matter, Defendants challenge the proposed class definition on the grounds that class members are not ascertainable. To establish that a class is ascertainable, Plaintiffs must show that its members are readily identifiable so that the court can determine who is in the class and, therefore, bound by the ruling. *See Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983). "A class's definition will be rejected when it requires addressing the central issue of liability in a case and therefore the inquiry into whether a person is a class member essentially require[s] a mini hearing on the merits of each [plaintiff's] case. Class members need

not be ascertained prior to certification, but must be ascertainable at some point in the case."
*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 341-42 (S.D.N.Y. 2004) (brackets in original) (citations and internal quotations omitted).

According to Defendants, determining membership would require the Court to determine for each putative class member all of the following: whether the class member purchased an overpriced and over-appraised home and whether such overpricing and over-appraising were intentional; whether the class member purchased a home he or she could not afford; whether the class member's home was defectively built; whether the class member received representations as to expected property tax payments and if so whether the actual taxes were higher than promised; whether the class member was promised amenities that were not provided; and whether the class member received a representation as to the quality of the neighborhood in which the home was located and if so whether it was worse than represented. Defs.' Supp. Mem at 4-5.

Plaintiffs counter that "[j]ust because a court has to decide factual issues to determine class membership does not mean the class is unascertainable . . . . Rather, what matters is that the class members can be identified by reference to objective criteria." Pls.' Supp. Rep. Mem. at 3-4.

If the proposed class were limited solely to "All Blacks and Hispanics who purchased residential real estate from the Sellers and who because of their race and/or national origin, were pursuant to the Seller's blanket policies and standard practices, steered to areas Defendants had designated for Blacks and Hispanics purchasers (the Designated Areas")" the Court could easily conclude that the class is ascertainable. However, by continuing the definition to include those who "because of Defendants' standard deceptive conduct purchased homes that were over-

8

appraised" etc., Plaintiffs have injected a fact-intensive determination as to class membership whereby determining membership would essentially require a mini-hearing on the merits of each class member's case, including their individual injury. *See Burley v. City of New York,* 2005 WL 668789 *8 (S.D.N.Y. March 23, 2005) (finding necessity for fact intensive inquiry at odds with ascertainability); *cf. Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 56 (S.D.N.Y. 2000) ("definition will be rejected when it requires addressing the central issue of liability"). Plaintiffs' suggestion that these determinations can be made by reference to objective standards does not alleviate the problem for two reasons. First, Plaintiffs do not propose objective standards to meet all these concerns. Second, objective standards, to the extent they may exist, would not, in this case, eliminate the necessity for mini-trials to determine if the objective standard has been met.

While Plaintiffs have invited the Court to "fashion" a class, the Court declines the invitation. First, "whatever authority [the Court] might have [] to undertake that task, [it does] not think it appropriate to provide legal advise to experienced class action litigators." *In re IPO*, 483 F.3d 70, 73 (2d Cir. 2007) (denying petition for rehearing). Also, to the extent it might be appropriate to exclude claims from the class, reconfigure the class, or have different class definitions for different causes of action, that decision should be made by the representative plaintiffs in consultation with their counsel. Finally, Defendants have framed their arguments to address the class as proposed by Plaintiffs and fairness dictates that they be given an opportunity to be heard as to any proposed class definition.

As the Court finds that the proposed class is not ascertainable, it would be unproductive at this juncture for the Court to examine the explicit requirements of Rule 23(a) and 23(b)(3).

## CONCLUSION

For the reasons set forth above, the motion for class certification is denied. The parties are directed to appear for a conference on April 30, 2008 at 11:00 a.m.

**SO ORDERED.**

Dated: Central Islip, New York
      March 31, 2008  /s/ _____
                                           Denis R. Hurley
                                           Senior District Judge